IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                                                  Criminal No. 18-2635-WJ

ORIN KRISTICH,

    Defendant.

### MEMORANDUM OPINION AND ORDER
### DENYING REQUEST FOR COMPASSIONATE RELEASE

**THIS MATTER** comes before the Court upon inmate Orin Kristich's *pro se*[1] Motion for a Reduction in Sentence and/or Compassionate Release (**Doc. 106**), the United States' Response (**Doc. 110**), and Kristich's Reply (**Doc. 113**). The Court, having reviewed the pleadings and applicable law, concludes the circumstances presented by Kristich do not rise to the extraordinary and compelling level required by statute. His request for a compassionate release is **DENIED**. The various other issues raised in Kristich's briefs are also **DENIED** or, alternatively, **DISMISSED without prejudice** (subject to the explanations below).

### BACKGROUND

On August 14, 2018, Kristich was charged in a one Count Indictment (**Doc. 7**) alleging he knowingly transported a minor in interstate commerce with the intent to engage in sexual activity with the child, in violation of 18 U.S.C. §§ 2423(a) and (e). Later, in October 2020, an Information (**Doc. 50**) was filed, alleging Kristich knowingly persuaded, induced, enticed, and coerced a minor

---

[1] Because Kristich appears *pro se*, the "rule of liberal construction" applies—meaning the Court must construe his pleading generously (without, however, assuming the role of advocate). *United States v. Hernandez*, 627 F.3d 1331, 1335 (10th Cir. 2010) (Holmes, J.).

1

to travel in interstate commerce to engage in sexual activity—in violation of 18 U.S.C. § 2422(a). That same day, on October 23, 2020, Kristich waived his indictment (**Doc. 52**) and entered into a plea agreement (**Doc. 54**).

In this Rule 11(c)(1)(C) plea agreement, Kristich pleaded guilty to the charge in the Information (**Doc. 50**)—that is, the coercion and enticement charge. The parties agreed that a specific sentence "within the range of 5 to 12 years imprisonment," **Doc. 54 at 5**, was appropriate. The plea agreement also contained a waiver of appeal rights. *Id.* **at 9**.[2]

Prior to sentencing, a Presentence Report ("PSR") was prepared (**Doc. 57**). The PSR indicated, among other things, that the total offense level was 40 and that Kristich was in criminal history category II (**Doc. 57 at 24**). Kristich filed objections (**Doc. 59**) to the PSR. Specifically, he objected to the cross-reference in USSG §§ 2A3.1 and 2G1.3(c)(3). The Court overruled this objection (**Doc. 74**). The Court sustained his objections, however, to the "repeat and dangerous" and "physical restraint" enhancements under USSG §§ 4B1.5(b)(1) and 3A1.3, respectively. These objections lowered Kristich's offense level by seven. At the end of the day, the Court concluded the final offense level to be 33—instead of 40. *Compare* **Doc. 62 at 7 n.2**, *and* **Doc. 74 at 2**, *and* **Doc. 91 at 35**, *with* **Doc. 57 at 8–9**.

---

[2] Paragraph 20 of the Plea Agreement (**Doc. 54**) is titled "WAIVER OF APPEAL RIGHTS." *Id.* **at 9**. The entirety of the waiver is recited below:
> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

Ultimately, the Court accepted the plea agreement (**Docs. 74 & 91**) and sentenced Kristich to 120 months—which was within the agreed upon range in the plea agreement (but below the advisory Guidelines range). The Judgment (**Doc. 77**) was entered on August 30, 2021.

Kristich then filed an appeal (**Docs. 79–83**). In January 2022, the Tenth Circuit issued its Order and Judgment (**Doc. 98**) enforcing the appeal waiver and dismissing the appeal. *See United States v. Kristich*, 2022 U.S. App. LEXIS 152 (10th Cir. Jan. 4, 2022) (per curiam) (unpublished). On April 13, 2022, the panel withdrew and replaced its Order and Judgment. *See United States v. Kristich*, 2022 U.S. App. LEXIS 9921 (10th Cir. Apr. 13, 2022) (unpublished). This mandate (**Doc. 102**) took effect on April 21, 2022. *See United States v. Kristich*, 2022 U.S. App. LEXIS 9920 (10th Cir. Apr. 13, 2022) (per curiam) (unpublished). Once again, the panel "grant[ed] the government's motion to enforce the appellate waiver in the plea agreement" and dismissed the appeal. *Id.* at *6. Then, on May 31, 2022, the Supreme Court denied Kristich's petition for certiorari (**Doc. 103**). *Kristich v. United States*, 142 S. Ct. 2762 (2022).

As it stands, Kristich has been in federal custody since August 14, 2018 (**Doc. 57 at 1**). And, based upon the sentence imposed, his estimated release date is September 13, 2026.[3]

## DISCUSSION

In May 2024, Kristich filed a "Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)." **Doc. 106**. In his motion, Kristich lists two reasons as justifying a compassionate release: (1) first, "I have been diagnosed with a terminal illness," and (2) second, "U.S.S.G. 1B1.13(b)(4)(B)." *Id.* at **4**.

---

[3] This information is based on the Bureau of Prisons ("BOP") inmate locator website. *See* BOP Inmate Locator, available at https://www.bop.gov/inmateloc/ (search for Number 99811-051); *see also* **Doc. 110 at 2; Doc. 110-3 at 1** (listing projected release date as "09-13-2026").
  The inmate locator also shows that Kristich is housed at Marianna FCI in Florida.

The United States concedes that Kristich has exhausted his administrative rights for the compassionate release. *See infra* ¶ II.A. But that is only "the first hurdle." **Doc. 110 at 7**. None of the reasons described by Kristich are "extraordinary and compelling," as required.

## I. Compassionate Release Legal Standard

A district court may grant a motion for compassionate release if three requirements are met: (1) extraordinary and compelling reasons warrant a sentence reduction; (2) the sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the Court considers the § 3553(a) factors, to the extent they are applicable. *See United States v. Wesley*, 60 F.4th 1277, 1282 (10th Cir. 2023); *see also United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).[4]

Before granting a motion for compassionate release, a district court must "'address all three steps.'" *United States v. Hald*, 8 F.4th 932, 938 (10th Cir. 2021) (Hartz, J.) (quoting *McGee*, 992 F.3d at 1043). Alternatively, a district court may deny a compassionate release for any reason without addressing the others. *See United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *McGee*, 992 F.3d at 1043); *see also United States v. Soto*, 2022 U.S. App. LEXIS 28634, at *2 (10th Cir. Oct. 14, 2022) (unpublished) (Hartz, J.) ("A district court may . . . deny a motion for compassionate release if any one of [the three requirements] is not met.").

## II. Kristich's Request for Compassionate Release

As explained below, even though Kristich has exhausted his administrative remedies, the Court—in its "substantial discretion"—denies his request for a compassionate release. *Hald*, 8 F.4th at 938 n.4; *see also Wesley*, 60 F.4th at 1283 (noting circuit precedent confirms that district

---

[4] There is a preliminary requirement, too. A court may grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) only if the defendant has exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). This exhaustion requirement is not jurisdictional, though. *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

courts have substantial discretion). For starters, the Court does not agree that extraordinary and compelling circumstances exist. But even if his health concerns were terminal—a conclusion that is not supported by the evidence—the Court would not release Kristich based on the § 3553(a) factors. *See infra* ¶ II.C.

### A. *Exhaustion of administrative rights*

This Court cannot modify a term of imprisonment unless a prisoner has fully exhausted his administrative rights. 18 U.S.C. § 3582(c)(1)(A); First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

Here, included with his Motion, Kristich provided emails he sent to the Warden requesting a compassionate release (**Doc. 106 at 3, 7, 13**). And more than 30 days have elapsed (as required by statute). 18 U.S.C. § 3582(c)(1)(A). Accordingly, the United States agrees that "Defendant has exhausted his administrative remedies." **Doc. 110 at 7**.

Thus, the merits of his request for compassionate release request are ripe for review.

### B. *Absence of extraordinary and compelling reasons*

The Sentencing Guidelines' policy statement on compassionate release lists six circumstances that qualify as "extraordinary and compelling reasons." *See* USSG §§ 1B1.13(b)(1)–(6). Generally speaking, those categories are: (1) medical circumstances, (2) old age, (3) death or incapacitation in the inmate's family, (4) abuse by a correctional officer, (5) "other reasons" that are "similar in gravity" to the first four, or (6) if an inmate received "an unusually long sentence and has served at least 10 years of the term of imprisonment." *Id*. It is through this lens that the Court evaluates Kristich's motion—ostensibly pleaded under USSG §§ 1B1.13(b)(1) and (b)(4). *See* **Doc. 106 at 4**.

#### 1. Failure to prove terminal illness under USSG § 1B1.13(b)(1)(A)

Kristich's motion requires the Court to determine how the terminal illness examples listed in USSG § 1B1.13(b)(1)(A) are linked to their "surrounding words." *Fischer v. United States*, 144 S. Ct. 2176, 2183 (2024) (quoting *Yates v. United States*, 574 U.S. 528, 536 (2015) (plurality opinion)). The examples listed in the policy are certainly not exhaustive—as other "serious and advanced illness[es] with an end-of-life trajectory" fall within its purview. USSG § 1B1.13(b)(1)(A); *cf. West v. Gibson*, 527 U.S. 212, 217 (1999) (holding that Congress' use of the word "including" in the statute made "clear" that the phrase was not limited to the specified remedies mentioned); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 19 (2021) (finding a list "is not exhaustive" when the words "include" or "including" set forth examples); *see also* ANTONIN SCALIA & BRYAN A. GARNER, *Reading Law: The Interpretation of Legal Texts* 132–33 (2012) (explaining "the word include does not ordinarily introduce an exhaustive list").

Given the "end-of-life" (or terminal) precondition in the policy statement, it is clear that compassionate release for medical conditions is to be treated as a rare event. *See United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, C.J.); *Ward v. United States*, 11 F.4th 354, 358 n.2 (5th Cir. 2021) (finding that a medical condition did not fall into subparagraph (b)(1) because the prisoner's "condition had not been determined to be terminal" or on the "end of life trajectory").

The policy lists "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia" as examples of terminal illnesses. Notably, Kristich suffers from none of these. But even so, the inquiry does not stop there. Instead, the question is whether Kristich's condition is similar enough to the enumerated examples to fall within the policy's meaning.

6

A review of Kristich's medical records indicate he currently suffers from: Vitamin D deficiency, myopia, presbyopia, asthma, constipation, fatty liver disease,[5] and pre-diabetes (**Doc. 106 at 83, 96, 99; Doc. 110-4 at 56, 59, 176–77, 281–82, 325–26**). He also has a calcified nodule[6] on his lung. *See* **Doc. 110-4 at 57, 60, 63, 129, 143, 200, 316**. These ailments are certainly serious, but none are listed as "terminal." *Cf.* **Doc. 110-4 at 20, 128, 200, 313, 316, 318** (listing patient's condition as stable, normal, or unremarkable). Nevertheless, Kristich asserts that his medical circumstances are "terminal" and fall under USSG § 1B1.13(b)(1)(A). *See* **Doc. 106 at 4**.[7]

To see why Kristich's approach is misguided, imagine a local football league adopts a rule explaining games are only postponed for extraordinary weather events. In the league's bylaws, examples of such extraordinary weather events include "tornados, hurricanes, blizzards, flash floods, and severe lightning storms." The game would be delayed if a powerful derecho thunderstorm rolled through town. If, however, it was merely raining on game day—then the game would be played. The examples of severe weather all concern dangerous weather patterns that might cause injury to athletes, fans, or infrastructure. Rain, on its own, is simply not of the same

---

[5] A diagnosis of "fatty liver" disease alone is not an extraordinary and compelling reason for compassionate release. *See, e.g., United States v. Hill*, 2022 U.S. App. LEXIS 4089 (3d Cir. Feb. 15, 2022) (unpublished) (finding that prisoner's "fatty liver disease, liver failure, asthma, nerve and muscle damage from gunshot wounds, and vitamin D deficiency" were not "extraordinary and compelling"); *United States v. Griffin*, No. 07-cr-374, 2023 U.S. Dist. LEXIS 110258, at *9 (E.D. Pa. June 27, 2023) ("Without more, [prisoner's] fatty liver disease is not enough to amount to 'extraordinary and compelling' circumstances."); *United States v. Raymer*, No. 17-cr-153, 2020 U.S. Dist. LEXIS 110281, at *7–8 (E.D. Tex. June 23, 2020) (determining prisoner did not demonstrate his "fatty liver disease" was terminal); *United States v. Rosa*, No. 20-cr-30, 2024 U.S. Dist. LEXIS 54750, at *11 (E.D. Wis. Mar. 27, 2024) (same); *United States v. Svirskiy*, No. 14-cr-10363, 2020 U.S. Dist. LEXIS 241568 (D. Mass. Dec. 23, 2020) (same).

[6] As of February 2023 (**Doc. 106 at 121**), the calcified nodule was "stable," and the test results were "unremarkable." The most recent records included in Kristich's filing show that in April 2024, he was also "stable." *Id.* **at 19**. Nothing provided to the Court shows any advanced illness associated with this nodule.

[7] Contrary to his assertions, **Doc. 106 at 16**, the medical records show that Kristich has been treated by numerous medical specialists. Far from being incapable of treating him, BOP medical staff and outside medical staff have administered regular and thorough medical care.

kind. That is not to say, however, that rain could never meet the league's postponement or cancellation criteria—but rain alone is an insufficient reason to postpone a game.

In this case, the Court does not find sufficient evidence in the record to conclude that Kristich's medical circumstances are "terminal," as alleged. Certainly, his health is concerning. But the record does not indicate that his prognosis is dire or terminal—nor does his health appear to be on a rapid decline. This is not to say that his underlying conditions are pleasant; no doubt they are not. But the law only allows sentence reductions for extraordinary and compelling circumstances (meaning Kristich's stable and relatively asymptomatic conditions do not reach the necessary level). *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13(b)(1)(A).

Tellingly, Kristich appears to acknowledge that his ailments are not terminal, stating "some of the conditions could lead to death if untreated." **Doc. 113 at 5**. He even acknowledges the BOP claims he is in "stable" condition. *Id.* In his Reply, Kristich now relies on USSG § 1B1.13(b)(1)(B) and (C) to justify his release.[8] *Id.* **at 4**. But his original motion only checked the box stating, "I have been diagnosed with a terminal illness," **Doc. 106 at 4**, not the box that "I have a serious physical or medical condition . . . ." *Ibid.* Issues raised "for the first time . . . in a reply brief are generally deemed waived," even for *pro se* litigants. *See Silva v. United States*, 859 F. App'x 285, 287 (10th Cir. 2021) (unpublished) (internal quotations and citations omitted).

### 2. Failure to prove abuse under USSG § 1B1.13(b)(4)(B)

Next, Kristich lists "U.S.S.G. 1B1.13(b)(4)(B)," **Doc. 106 at 4**, as a reason for his compassionate release. This policy statement reads as follows:

> **(b) Extraordinary and compelling reasons.** Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof . . . (4) Victim of Abuse. The defendant, while in custody serving the term

---

[8] Kristich's Reply also quotes (**Doc. 113 at 3**) two paragraphs from *Frye v. United States*, No. 20-cv-3011, 2023 U.S. Dist. LEXIS 151186, at *10–11 (D. S.C. Aug. 25, 2023). But *Frye* dealt with the BOP's policies for patient care in a Federal Tort Claims Act case—not a compassionate release request.

8

of imprisonment sought to be reduced, was a victim of . . . physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions) . . . . That was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

The United States argues there is nothing in Kristich's records to support relief under USSG § 1B1.13(b)(4)(b). **Doc. 110 at 9**. The Court agrees.

As far as the Court can tell, Kristich's USSG § 1B1.13(b)(4)(B) complaint involves "an inmate going by 'Q'" (**Doc. 110-5 at 2**)—not corrections staff. On the Standard Form claiming damage, injury, or death, Kristich explains he sustained injuries after "Q" attacked him. ***Ibid.*** In addition to the physical injuries from "Q," Kristich also complains (several times) about a corrections officer shining a flashlight in his eyes. *Id.* **at 7**.

In his Reply, Kristich accurately recites the need for USSG § 1B1.13(b)(4)(B) injuries to be established by a criminal conviction, civil liability, or administrative proceeding (**Doc. 113 at 6–7**). Between his Motion (**Doc. 106**) and his Reply (**Doc. 113**), Kristich filed a combined 145-pages of documents. But not a single piece of evidence supports his claim about abuse. Instead, Kristich merely references a "BP-11" form—but never provides the supporting documentation. **Doc. 113 at 5 & 7**. Based on the record, the Court cannot conclude that the facts Kristich alleges (*id.* **at 7**) are true. Notably, Kristich claims to have gone "blind for around two months [in May 2024]," *id.* **at 8**, because a corrections officer shined a flashlight in his eyes. But his medical records from May show that his vision was fine. *See* **Doc. 110-4 at 1 & 6** (complaining of "red" eyes and wanting to get glasses).

At bottom, neither incident was established by criminal conviction, civil liability, or administrative proceeding. To the contrary, Kristich's personal injury claims were denied (**Doc.**

**110-6**). And the flashlight saga does not constitute "serious bodily injury," as required (because his medical records show no such injury). Plainly, the record does not show Kristich was a victim of physical abuse under USSG § 1B1.13(b)(4)(B).

\* \* \*

In sum, the Court finds Kristich did not demonstrate extraordinary and compelling circumstances that warrant a compassionate release.

### C. *Section 3553(a) factors*

Having determined that Kristich did not present extraordinary and compelling reasons warranting compassionate release, the Court is not required to consider the § 3553(a) factors. However, even if Kristich had shown extraordinary and compelling reasons, the Court's application of the sentencing factors counsels against release.

For what it's worth, Kristich does not mention the § 3553(a) factors in his Motion (**Doc. 106**). In Response, the United States forcefully argues that the statutory sentencing factors support Kristich's continued detention (**Doc. 110 at 11**). Then, in his Reply (**Doc. 113**), Kristich argues that the sentencing factors weigh in his favor. *Id.* **at 13**. Ultimately, the Court agrees with the United States. The seriousness of his underlying conviction, the need to deter future misconduct, the sentencing range established, and the need to avoid sentencing disparities all weigh against granting Kristich's compassionate release.

First, the offense of conviction involved the "transportation of a 13-year-old minor from Colorado to New Mexico for the purpose of engaging in illegal sexual activity." **Doc. 110 at 11**. This is a serious offense. 18 U.S.C. § 3553(a)(1). Second, absent the plea agreement, Kristich was looking at an advisory Guidelines range of 151–188 months. *See* 18 U.S.C. § 2422(a); **Doc. 91 at 35**. But, based upon the plea agreement, the Court could only impose a sentence between 5–12

years (**Doc. 54 at 5 & 6**). Therefore, in the Court's view, granting early release from a mid-range sentence in a below-Guidelines plea would not provide just punishment or ensure adequate deterrence. 18 U.S.C. § 3553(a)(2). Instead, granting Kristich's compassionate release would create a sentencing disparity. 18 U.S.C. § 3553(a)(6).

One last point. In his Reply, Kristich correctly argues that the United States misstated his crime of conviction carried a "mandatory minimum" sentence. *See* **Doc. 113 at 1** (quoting **Doc. 110 at 1**). But this incorrect statement of law in the United States' Response obviously plays no role in the Court's decision (as it was disregarded). Likewise, the Court can find no support—outside of Kristich's Reply—that a 72-month sentence is the "heartland" for 18 U.S.C. § 2422(a) convictions. *See* **Doc. 113 at 2**.[9]

All this to say, Despite Kristich's desire to be released early, the § 3553(a) factors still support the originally imposed sentence.

**D.** *Request for a hearing*

There is no requirement for this Court to hold an evidentiary hearing on Kristich's motion for compassionate release. *Hemmelgarn*, 15 F.4th at 1032 n.3; *see also United States v. Pinson*, 835 F. App'x 390, 395 n.6 (10th Cir. 2020) (unpublished). But, as detailed above, no factor important to the decision is "reasonably in dispute." *United States v. Piper*, 839 F.3d 1261, 1270 (10th Cir. 2016). Therefore, the Court is not required to, nor will it, hold a hearing.

---

[9] Again, the cross-reference in USSG § 2G1.3(c)(3) states that all "§ 2242" offenses require the application of USSG § 2A3.1. Under USSG § 2A3.1, the lowest offense level is 30. *See id.* at (a)(2). But even Defendants in criminal history category I are subject to an advisory Guidelines sentence of 97–121 months for convictions under 18 U.S.C. § 2242(a). Thus, there is no way the Court can accept Kristich's proffer that "the heartland [is] 72mo." **Doc. 113 at 2**.

**III. Requests for Appointment of Counsel and a Medical Expert**

In his Motion, Kristich checked "Yes" on the form's "Request for Appointment of Counsel," question (**Doc. 106 at 6**). There is, however, no right to counsel in § 3582(c)(2) proceedings. *See Hemmelgarn*, 15 F.4th at 1032 ("No right to counsel extends to a § 3582(c)(2) motion.") (citation omitted); *United States v. Akers*, 807 F. App'x 861, 867 (10th Cir. 2020) (unpublished) ("There is no constitutional right to counsel beyond the direct appeal of a criminal conviction." (citation omitted)); *cf. Lawrence v. Florida*, 549 U.S. 327, 337 (2007) ("In the postconviction context, prisoners have no constitutional right to counsel." (cleaned up)).

Kristich's case is no exception; so, the Court will deny his request for appointed counsel.

His request for "an Expert witness who is a 'qualified medical expert'; to assist the trier-finder of fact" is also denied. **Doc. 113 at 5**. It is "very difficult" for a court to decide (in the criminal context) if the BOP's medical care has been poor. *United States v. Eccleston*, 543 F. Supp. 3d 1092, 1136 (D.N.M. 2021) (Browning, J.). But, more importantly, the proper route for dealing with an inmate's medical complaints is not "redo[ing] a sentence," or "release[ing] the defendant." *Id.* Civil rights lawsuits are the appropriate vehicle for addressing these issues—not compassionate release motions. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (discussing civil rights actions); *Richardson v. Daniels*, 557 F. App'x 725 (10th Cir. 2014) (unpublished) (discussing *Bivens* lawsuits for prisoners' medical care); *see also infra* ¶ V.

In deciding this compassionate release motion, the Court relies on the BOP's medical records to reach its conclusions. And although Kristich contends that BOP medical personnel are not medical experts and that the Court should appoint a medical expert, the Court is not aware of legal authority supporting his contention. It therefore respectfully declines to adopt his reasoning.

**IV. Grievances With His "PSI"**

Finally, the Court notes that Kristich complains "the wrong/false P.S.I. [was] sent by the U.S.P.O." **Doc. 106 at 5**. Throughout his 122-page long Motion, several other references to an incorrect "P.S.I" are raised. *Id.* **at 7, 9, 11**.[10] But, prior to sentencing, Kristich filed objections to the PSR (**Doc. 59**). In fact, the Court sustained two of his objections. *See* **Doc. 59 at 5; Doc. 62 at 7 n.2; Doc. 91 at 5 & 22**.

This motion for compassionate release is not the appropriate avenue for a post-conviction PSR issue—rather, that is an issue for a habeas petition.[11] *See generally United States v. Gattas*,

---

[10] Kristich also complains about this "non-existent P.S.I." in his Reply (**Doc. 113 at 7 & 9**).

[11] To steal a bit of brevity from Eleventh Circuit Judge Kevin Newsom, "**Warning: Long footnote ahead. This is a sideshow, but it's an important one.**" *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1269 n.11 (11th Cir. 2022) (en banc) (Newsom, J., dissenting) (emphasis added).

To the extent these passing references to the "wrong/false P.S.I." can be construed as a § 2255 petition, the result is that Kristich filed a second or successive habeas petition. This is not allowed without prior authorization from the Tenth Circuit. Even if this issue were overlooked (which it can't be), the Court would conclude the PSR/PSI issue is: (1) time barred, and (2) enforceable under the appeal waiver.

First, under the one-year statute of limitations, habeas petitions must be filed no later than "one year from the date on which the judgment of their conviction became final." *United States v. Burch*, 202 F.3d 1274, 1275 (10th Cir. 2000). Here, the Tenth Circuit mandate was issued on April 21, 2022 (**Doc. 102**). His petition for certiorari to the Supreme Court was denied on May 31, 2022 (**Doc. 103**). This means Kristich's judgment of conviction became final on May 31, 2022—the date in which the Supreme Court "denie[d] the defendant's timely filed petition for certiorari." *Burch*, 202 F.3d at 1276. Thus, his one-year period under § 2255 expired in June 2023. His compassionate release motion containing this PSR-related issue was not filed until May 2024—meaning he is one year too late.

To determine whether Kristich has waived an appeal, the Court turns to the test outlined in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). And although the *Hahn* factors speak in terms of appellate rights, the Tenth Circuit also applies them to collateral attacks under § 2255. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). First, Kristich clearly "waive[d] the right to appeal [his] conviction(s) and any sentence . . . imposed in conformity with [the] plea agreement." **Doc. 54 at 9**. To the extent his argument challenges the PSR, it falls within the scope of the appeal waiver to which he agreed. Second, as the Tenth Circuit previously ruled, "by signing the written plea agreement and in his responses to the court's questions . . . Kristich acknowledged that he was entering his plea knowingly and voluntarily and that he understood its consequences, including the possible sentences and appeal waiver." *Kristich*, 2022 U.S. App. LEXIS 9920, at *1–2. Finally, enforcing the appeal waiver will not result in a miscarriage of justice.

In sum, it "plainly appears from the [§ 2255] motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief," therefore the Court "must dismiss" the motion. *See* Habeas Corpus Rule 4(b). There can be no debate among reasonable jurists as to the Court's conclusions that (1) Kristich's § 2255 motion is untimely, and (2) he waived his right to collaterally attack his "conviction(s) and any sentence" in his plea agreement.

13

862 F.2d 1432 (10th Cir. 1988); *United States v. Brumley*, 753 F. App'x 594 (10th Cir. 2018) (unpublished).

So where does that leave the Court?

It is not entirely clear that Kristich can raise this issue at all. As noted above, *see supra* n.2, Kristich waived the right to collaterally attack his conviction or sentence (**Doc. 54 at 9 ¶ 20**). Plus, Kristich has already filed[12] a separate civil habeas petition. *See generally Kristich v. United States*, No. 22-cv-569 (D.N.M. filed July 29, 2022); *see also In re Kristich*, 2023 U.S. App. LEXIS 36225 (10th Cir. Dec. 7, 2023). This means any PSR-related error raised in the instant motion either should have been raised in his pending habeas case or would be a second or successive habeas petition. And there is a long body of law that limits second or successive habeas petitions when a claim "could have been presented in an earlier petition but was not." *United States v. Miles*, 923 F.3d 798, 803 (10th Cir. 2019) (quoting *Stanko v. Davis*, 617 F.3d 1262, 1269 (10th Cir. 2010)); *See also* Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts (providing that a motion to vacate, set aside, or correct sentence must "specify ***all grounds*** for relief available to the moving party").

Thus, if this PSR/PSI issue was construed as a § 2255 petition, it would be his second such petition. And because Kristich did not obtain prior Tenth Circuit authorization to pursue a successive § 2255 claim, the Court does not have jurisdiction. *See United States v. Nelson*, 465 F.3d 1145, 1148 (10th Cir. 2006) ("A second or successive § 2255 motion cannot be filed in district

---

In conclusion, if construed as a § 2255 habeas filing, Kristich's PSI/PSR issue would have to be **DISMISSED without prejudice** for lack of jurisdiction. A certificate of appealability would also have to be **DENIED** under Habeas Corpus Rule 11—as this Memorandum Opinion and Order is not reasonably debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In light of these issues, the Court will decline to construe Kristich's allegations as asserting a § 2255 habeas corpus claim.

[12] This Court takes judicial note of the docket in the separate civil habeas proceeding. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

14

court without approval by a panel of this court. As a result . . . the district court does not even have jurisdiction to deny the relief sought in the pleading."); *see also Jones v. United States*, Nos. 19-cv-724 & 11-cr-2994, 2020 U.S. Dist. LEXIS 84263, at *1 (D.N.M. May 13, 2020) (Johnson, C.J.) ("[T]he Court lacks jurisdiction to consider successive § 2255 motions without prior authorization from the Tenth Circuit."). If the Court construed Kristich's allegations as a § 2255 habeas petition, then this matter must be dismissed. Therefore, due to these consequences, the Court declines to construe his filing as a § 2255 habeas petition.

## V. Additional Issues[13]

A few ancillary issues were raised in Kristich's Reply that warrant brief discussion. For one, he asserts Eighth Amendment violations based on allegedly subpar[14] medical care while incarcerated (**Doc. 113 at 5–6 & 9**). But a challenge to the conditions of confinement requires a civil rights action—not a compassionate release motion, a sentence reduction motion, or a habeas corpus petition. *See Palma-Salazar*, 677 F.3d at 1035; *see also Friedman v. Anderson*, 249 F. App'x 712 (10th Cir. 2007) (unpublished) (Gorsuch, J.) (noting that claims for "inadequate medical care" should not be brought under § 2241 but instead as a "civil rights action"); *Garcia-Bermudez v. Brooks*, 153 F.3d 727 [published in full-text format at 1998 U.S. App. LEXIS 16856] (10th Cir. July 21, 1998) (unpublished table opinion) (noting that claims "of inadequate medical care . . . do not constitute grounds for habeas corpus").

---

[13] The Court need not "sift through the record" to find support for Kristich's arguments. *Phillips v. James*, 422 F.3d 1075, 1081 (10th Cir. 2005). Even though the Court affords these *pro se* pleadings a liberal construction, the Court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 840 (10th Cir. 2005).

[14] Section 2241 habeas petitions are used to attack the validity or execution of a sentence—they are not, however, civil rights actions where prisoners may litigate allegedly abusive prison conditions. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997); *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Any such a challenge—based upon the conditions of confinement—must be brought pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

He also requests that he be released to a "half-way house," **Doc. 113 at 10**, to serve out the "last 6mo. of his sentence." In the Judgment, one of the special conditions for supervision requires that Kristich "reside in a residential reentry center for a term of up to 180 days." **Doc. 77 at 5**. On the record, at sentencing, the Court stated: "The Defendant, upon release from the Bureau of Prisons, must reside at a residential re-entry center or halfway house for a term of up to 180 days, and you must follow the rules and regulations of the halfway house." **Doc. 91 (Sentencing Tr.) at 37:21–24**. Nowhere in the record did the Court say that Kristich will be sent to a halfway house for the last six months of his sentence. Construing this grievance liberally, as it must, the Court recognizes that "petitions seeking review of whether BOP staff followed the law in evaluating an inmate for community confinement may be brought in a § 2241 habeas petition." *Jones v. English*, 817 F. App'x 580, 583 (10th Cir. 2020) (unpublished) (citation omitted). But even so, a Petitioner seeking such release must "exhaust the administrative remedies offer by the BOP." *Steck v. Chester*, 393 F. App'x 558, 559 (10th Cir. 2010) (citing *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010)).

The last issue raised in Kristich's Reply (**Doc. 113 at 10–11**) deals with time credits. Of course, challenges to a prisoner's deprivation of time credits may be brought under § 2241. *See Hale v. Fox*, 829 F.3d 1162, 1165 n.2 (10th Cir. 2016); *see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 & 1093 (11th Cir. 2017) (en banc).

Having set the scene, the Court now moves on to its analysis. Notably, sometimes a federal court must "ignore the label that a *pro se* litigant attaches to a motion." *Castro v. United States*, 540 U.S. 375, 381–82 (2003). In this case, the Court does just that—construing Kristich's Reply (**Doc. 113**), in part, as a petition under 28 U.S.C. § 2241 challenging the execution of his sentence.

16

But because Kristich is housed[15] at Marianna FCI, the Court concludes that it lacks jurisdiction to entertain his § 2241 Petition. Judicial review of his claims must occur in the district of his confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[J]urisdiction lies in only one district: the district of confinement."); *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011) (explaining claims that "attack the execution of a sentence . . . must be filed in the district where the prisoner is confined."). Here, two of these complaints involve the execution of his sentence. And Kristich is serving his sentence at Marianna FCI. Thus, Kristich is located outside the District of New Mexico. This means this Court lacks jurisdiction and must dismiss. *See Licon v. Ledezma*, 638 F.3d 1303, 1311 (10th Cir. 2011).

That being said, a district court may, *sua sponte*, consider transfer (instead of dismissal). *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). When making this determination though, the district court must evaluate "whether the claims alleged are likely to have merit." *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). Here, curing the jurisdictional defects through transfer would "wast[e] judicial resources." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000). The merits of this case are "clearly doomed." *Id.*

In arriving at the decision ***not*** to transfer this § 2241 Petition, the Court notes that: (1) § 2241 petitions are not the proper vehicle for custodial medical complaints, (2) Kristich's desire to be released to a halfway house relies on a misunderstanding of the Judgment, and (3) Kristich provides no evidence of exhausting his administrative remedies regarding time-credits, as required (**Docs. 106 & 113**). *See Garza*, 596 F.3d at 1203; *United States v. Alexander*, 609 F.3d 1250, 1259–60 (11th Cir. 2010).

---

[15] The return address on filings as well as the BOP's inmate locator show that Kristich is housed at Marianna FCI in Florida. As such, he is not confined in the District of New Mexico—but instead in the Northern District of Florida. *See Adkins v. Warden*, 605 F. App'x 780, 781 (11th Cir. 2015) (per curiam) (unpublished).

The first point warrants no further discussion.

The second issue (regarding release to a halfway house) relies on a misunderstanding of the law. Plus, Kristich (1) waived any § 2241 claims in his plea agreement, and (2) has not exhausted his administrative remedies.

The third issue suffers the same maladies. Kristich does not show or assert that he exhausted the administrative process provided for by the BOP. In fact, nowhere in the 167-pages of his Motion and Reply is there any evidence that Kristich ever raised this time-credit issue. And, once again, he waived any right to file a § 2241 Petition in his plea agreement (**Doc. 54 at ¶ 20**).

\* \* \*

Because Kristich filed his pleadings *pro se*, the Court construed each of his arguments liberally. But even so, no § 2241 relief is warranted. A civil rights lawsuit is necessary if he wants to raise complaints about medical treatment. And if the Court were to construe the remaining allegations as a § 2241 petition, the outcome would be the issues are waived (**Doc. 54 at ¶ 20**), and unexhausted.

## CONCLUSION

The Court finds the circumstances presented by Kristich do not rise to the extraordinary and compelling level needed to grant a compassionate release. Moreover, Kristich's request does not find support under either the § 3553(a) factors or the Sentencing Commission's policy statements.

**IT IS HEREBY ORDERED** that:

(1) Kristich's *pro se* Motion for Compassionate Release (**Doc. 106**) is **DENIED**. The sentence imposed (**Doc. 77**) on August 30, 2021, remains in effect.

(2) The request for appointment of counsel (**Doc. 106 at 6**) is **DENIED** as **MOOT**. So too is his request for an appointment of a medical expert.

(3) Kristich's request for an evidentiary hearing on the underlying Motion for Compassionate Release is **DENIED**.

(4) To the extent Kristich's motion can be construed as raising a habeas claim under § 2241, that motion is **DISMISSED without prejudice** for lack of jurisdiction.

**IT IS SO ORDERED**.

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE